Argued at Pendleton May 4; affirmed June 14, 1938

# JONES ET AL. *v.* SKINNER
## (80 P. (2d) 60)

In Banc.

*Wilber Henderson*, of Portland (Platt, Henderson, Warner & Cram, of Portland, on the brief), for appellants.

*Sidney J. Graham*, of Portland (F. P. Keenan, of Portland, on the brief), for respondent.

KELLY, J. This is an injunction suit instituted by plaintiffs as the representative of certain stockholders of the Bank of Commerce, of Wasco, Oregon, which bank was closed as insolvent by the superintendent of banks, and in the course of its liquidation all depositors have been paid the principal sums due them with interest to the date of the closing of said bank. There now being a surplus of about $25,000 in the hands of said defendant as superintendent of banks, plaintiffs seek a decree restraining defendant from paying interest upon deposits and requiring him to call a meeting of stockholders with the view of paying said surplus to the stockholders who have paid assessments to defendant upon their stock in said bank.

The question is whether depositors in a bank, which was closed as insolvent by the superintendent of banks, are entitled to interest upon their deposits where assets are more than sufficient to pay the principal of all claims.

■ In the absence of any statute upon the subject the general rule is that where the estate proves to be sufficient to meet all demands and leave a surplus over, interest on all claims, whether they are interest-bearing or not, will be allowed the creditors during the administration of the estate: 39 A. L. R. 458, and cases there cited; 44 A. L. R. 1171, and cases there cited; 9 Zollmann, Banks and Banking, 486, § 6492, and cases cited in note 12; *Hackney v. Hood*, 203 N. C. 486 (166 S. E.

323); *Powell v. Hood*, 211 N. C. 137 (189 S. E. 483);
*Greva v. Rainey*, 2 Cal. (2d) 338 (41 P. (2d) 328).

We have no statute expressly prohibiting the payment of interest upon noninterest-bearing deposits. At the time the bank in suit became insolvent and was closed, viz. September 5, 1932, the statute provided:

"Interest on unsecured interest-bearing deposits, either commercial or savings, shall cease on the date any bank or trust company is declared insolvent." Section 22-2002, Oregon Code 1930.

In 1933, the foregoing section was amended to read as follows:

"Interest on unsecured interest-bearing deposits and on secured interest-bearing deposits other than public funds, either commercial or savings, shall cease on the date any bank or trust company is placed in the hands of the superintendent of banks for liquidation. Interest on public funds which are secured as authorized in section 22-805, Oregon Code 1930, shall continue at the rate being paid by the bank prior to the time it closed." Chapter 227, Oregon Laws 1933, at p. 323.

It is evident that the section above quoted, both originally and as amended, treats only of interest-bearing deposits in insolvent banks, that is, of those deposits which bear interest by the express terms of the contract of deposit or by reason of statutory provisions applicable to specific deposits. Confining it to that subject, it originally declared merely that unsecured interest-bearing deposits should not bear interest after the declaration of insolvency. Applying the rule of construction that the inclusion of one is the exclusion of the other (inclusio unius est exclusio alterius) that means that secured interest-bearing deposits shall continue to bear interest during the administration of the insolvent estate. Public funds being practically the only secured

interest-bearing deposits, the original section so construed corresponds with the plain mandate of the 1933 amendment thereto. This mandate is based upon grounds of sound public policy which afford special protection to public funds. In the later enactment this purpose is expressly declared. It comprised the only change in, or alteration or amendment of, the substantive law existing when the original section was adopted.

Besides plainly stating that public funds on deposit under an interest-bearing contract, whether secured or unsecured, should bear interest after insolvency, the later amendment further clarifies the original section by substituting the words, "on the date any bank or trust company is placed in the hands of the superintendent of banks for liquidation", instead of the words, "on the date any bank or trust company is declared insolvent". This was to conform to the provisions of the banking code with reference to the procedure in administering the estates of insolvent banks.

The general rule of almost universal application, where there is no statute, withholds interest from the date of insolvency except when, during the administration of the estate, funds become available in excess of the amount necessary to pay all claims in full: Braver, Liquidation of Financial Institutions, p. 948, § 811, and cases there cited.

There is no reason to think that the able and experienced legislators, who enacted these sections of the code, intended on one hand to prevent the payment of interest to depositors having interest-bearing deposits when, as in the case at bar, a surplus remains over and above the amount required to pay in full the principal sums due all creditors; and on the other hand intended to permit the depositors having noninterest-bearing deposits to receive interest from such surplus.

■ A reasonable construction of the statute, in the light of the well-established general rule above stated applicable where the statute is silent upon the subject, is that the legislature intended to and did enact an administrative law restricted to cases of insolvency, and further restricted the section under consideration to interest-bearing deposits only.

In a very early case in Massachusetts, it was said:

"* * * no good reason occurs to us, why the effects of an insolvent debtor, having increased in value in the hands of an assignee, and becoming sufficient to pay the debts with interest, shall be exempted from the operation of this law. He becomes in fact a solvent debtor, and his duties and obligations are the same with those of other solvent debtors." *Brown v. Lamb,* 6 Met. (Mass.) 203.

The supreme court of Vermont has said:

"It is true, the statute provides that, upon debts subject to the payment of interest, interest shall be computed to the date of filing the petition. It is matter of convenience that a time should be fixed for that purpose, and the time chosen is as convenient as any; but the statute does not mean that interest shall in no event be computed to a later date, for obviously it should be when, for instance, the assets are more than enough to pay the face of the debts as allowed." *Clemons v. Clemons' Estate,* 69 Vt. 545 (38 Atl. 314).

■ Plaintiffs argue that no claim for interest has been filed with the superintendent of banks, and hence none can be allowed. The vice of this argument lies in the failure to distinguish the basis upon which the right to interest rests in this case. It is not only because of the insolvency, it is not only because the procedure in insolvent estates with respect to filing claims has been observed, but it is also because the estate of the bank in suit is no longer insolvent. No good reason exists

why the surplus on hand in the estate should not be paid directly to the depositors, who are entitled to it, instead of returning it to the bank and thus relegating the depositors to their remedy against the bank. Under a procedure by which the superadded liability of stockholders could not be exacted by the receiver, the supreme judicial court of Maine holds that the receipt of dividends even to the full extent of the principal does not bar the creditors from bringing an action for the interest due on such principal. As between them and the stockholders, who are bound on their superadded liability, the stockholders must pay interest: *Flynn v. American Banking & Trust Co.*, 104 Me. 141 (69 Atl. 771, 19 L. R. A. (N. S.) 428, 129 Am. St. Rep. 378).

There is no reason, either in morals or law, why the bank now solvent should be relieved of its legal liability because heretofore it has been insolvent.

The decree of the circuit court is affirmed.

RAND, J., and ROSSMAN, J., did not participate in this opinion.